PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LESLIE O. YATES,

*Plaintiff-Appellee,*

v.

UMWA 1974 PENSION PLAN,

*Defendant-Appellant.*

No. 05-2224

Appeal from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
Glen M. Williams, Senior District Judge.
(CA-03-00080-GMW)

Argued: September 20, 2006

Decided: December 4, 2006

Before MICHAEL, Circuit Judge, N. Carlton TILLEY, Jr., Chief
United States District Judge for the Middle District of North
Carolina, sitting by designation, and Thomas E. JOHNSTON,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

Reversed and remanded by published opinion. Judge Michael wrote
the opinion, in which Judge Tilley and Judge Johnston joined.

## COUNSEL

**ARGUED:** Kathleen Marie Dowd, UNITED MINE WORKERS OF
AMERICA, Health and Retirement Funds, Washington, D.C., for
Appellant. Jeffrey Lynn Elkins, ADKINS, ELKINS & HUNNICUTT,

P.C., Norton, Virginia, for Appellee. **ON BRIEF:** Glenda Sullivan Finch, Deputy General Counsel, UNITED MINE WORKERS OF AMERICA, Health and Retirement Funds, Washington, D.C., for Appellant.

---

## OPINION

MICHAEL, Circuit Judge:

The Trustees of the United Mine Workers of America (UMWA) 1974 Pension Plan (1974 Pension Plan or Plan) denied Leslie Yates service credit on his pension for years when his employer, Erwin Supply and Hardware Company, Inc. (Erwin Supply), was not a signatory to a collective bargaining agreement that provided for pension benefits. Yates sued the Plan, and the district court awarded him a summary judgment that provided the service credit. The court arrived at its decision by importing the imputed liability provisions for a "controlled group of corporations" from the Coal Industry Retiree Health Benefit Act of 1992 (the Coal Act), 26 U.S.C. §§ 9701-9722. The court thus imputed to Erwin Supply the status of its sister company, Clinchfield Coal Corporation (Clinchfield), as a signer of the 1950 National Bituminous Coal Wage Agreement (NBCWA). This imputed signatory status for Erwin Supply, the court held, placed Yates under the terms of the 1950 NBCWA, which provided for pension benefits and entitled Yates to service credit for the disputed period. Because the Coal Act relates to retiree health benefits and does not apply to pension benefits, its imputed liability provisions cannot be used here. We therefore reverse.

I.

Yates worked in the coal fields as a truck driver for over forty years, delivering supplies to various mining operations. He was employed by Erwin Supply from September 1957 until early December 1969, with two years off for military service. Fifty-one percent of the stock of Erwin Supply was owned by a family named Erwin and forty-nine percent by Clinchfield until Erwin Supply was sold to the Pittston Company (Pittston) on October 31, 1958. Erwin Supply went

out of business on December 31, 1969, and a few days earlier, on December 16, 1969, Yates was hired by Clinchfield, a wholly-owned subsidiary of Pittston. Yates delivered mine supplies out of a Clinchfield warehouse until his retirement from the company on April 30, 2001.

Upon his retirement Yates applied for a pension under the UMWA 1974 Pension Plan, which was established pursuant to the 1974 NBCWA, the central collective bargaining agreement between coal operators and the UMWA. The Plan, which is a continuation of the benefits program established under the UMWA Welfare and Retirement Fund of 1950, is funded by contributions from employer-signatories to an NBCWA or any other agreement requiring pension contributions. The Plan's Director of Eligibility Services notified Yates on June 18, 2001, that his application had been approved with credit for 32.75 years of service, beginning April 1, 1968. Yates was given credit for his years of service with Clinchfield, which was a signatory to NBCWAs that provided for pension coverage. Yates was denied credit for much of his time with Erwin Supply, particularly from September 1957 through March 1968, a period when Erwin Supply's separate collective bargaining agreement with the UMWA did not provide for pension contributions or benefits. Yates was given some credit for service with Erwin Supply, beginning April 1, 1968, when Erwin Supply became a party to the NBCWA shortly before it closed its business.

Yates filed an internal appeal with the Plan to challenge the denial of service credit for the bulk of his years of employment by Erwin Supply. The Plan Trustees ultimately upheld the denial of credit. Yates then filed an action against the 1974 Pension Plan in the U.S. District Court for the Western District of Virginia, alleging that the Trustees abused their discretion by denying this credit. The claim arose under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B). Yates moved for summary judgment, pointing out that Erwin Supply and Clinchfield were brother-sister companies, both wholly owned by Pittston, and that Clinchfield and Pittston were NBCWA signatories. He claimed that his UMWA membership and his employment by Erwin Supply, which provided an essential mine supply function for its sister corporation, Clinchfield,

qualified his Erwin Supply service for pension coverage pursuant to NBCWAs signed by Clinchfield and Pittston.

The district court granted Yates's motion for summary judgment and held that the Plan Trustees were required to allow him service credit for the September 9, 1957, to March 31, 1968, period of his employment with Erwin Supply. In explaining its decision, the court recognized that Yates's eligibility for additional service credit depended on whether he had "worked [during the contested period] for an employer who signed a[n] NBCWA." J.A. 354. The court also recognized that Erwin Supply was not an NBCWA signatory during the contested period, but the court overcame this hurdle by importing a concept from the Coal Act, a federal statute passed to fund health care benefits for retired coal miners. Under the Coal Act any corporation in a "parent-subsidiary controlled group" may be liable for the health care premiums due under the Act from any NBCWA signatory in the corporate family. The district court held that because Erwin Supply, Clinchfield, and Pittston were all part of the same corporate group, Clinchfield's signatory status would be imputed to Erwin Supply. As a result, Yates's employment by Erwin Supply would be treated as employment by an NBCWA signatory for pension credit purposes. The Plan appeals the award of summary judgment to Yates.

## II.

### A.

We review de novo the district court's grant of summary judgment. *Lockhart v. United Mine Workers 1974 Pension Trust*, 5 F.3d 74, 77 (4th Cir. 1995). That venerable statement, however, begs the question of what standard we use in reviewing the Plan Trustees' decision to deny Yates certain service credit on his pension. The Plan gives the Trustees or other "properly designated" fiduciaries the power of "full and final determination as to all issues concerning eligibility for benefits." J.A. 239. Accordingly, we review the Trustees' decision for abuse of discretion. *Lockhart*, 5 F.3d at 77.

### B.

The Plan contends that the Trustees did not abuse their discretion in denying pension credit to Yates for his time with Erwin Supply

while it was not a signatory to a collective bargaining agreement that provided for benefits under the 1974 Plan or its predecessor. The Plan also contends that the Coal Act, which deals with health benefits, cannot be used to deem Erwin Supply an NBCWA signatory in order to award Yates the extra pension credit. We agree with the Plan.

The Plan prescribes the eligibility requirements for pension benefits paid by the 1974 Pension Trust. Yates seeks pension credit for his work for Erwin Supply between September 9, 1957, and March 31, 1968. Under the terms of the Plan a participant can receive credit for "signatory service" prior to 1978 only for work performed as an employee "in a classified job for an Employer signatory to the bituminous coal wage agreement then in effect." J.A. 228. For purposes of this case, the only relevant pre-1978 wage agreement would be the 1950 NBCWA (including its amended versions). Erwin Supply, however, was not a signatory to the 1950 NBCWA, except for a short period beginning April 1, 1968. Prior to April 1968 Erwin Supply's employees were represented by District 50 of the UMWA, and Erwin Supply and District 50 entered into a separate collective bargaining agreement to cover the company's truck drivers and warehouse employees. The Erwin Supply-District 50 agreement did not provide for pension benefits of any kind; in particular, it did not provide for pensions under the 1950 Welfare and Retirement Fund, the predecessor to the 1974 Plan. There is thus no contractual basis for awarding Yates pension credit for his employment with Erwin Supply prior to April 1, 1968.

The district court got around the contractual barrier by borrowing rules from the Coal Act to deem Erwin Supply a signatory to the 1950 NBCWA and extend Yates's pension coverage under the Plan. The Coal Act, however, does not apply to pension benefits. Congress passed the Coal Act in 1992 "to alleviate a crisis in the funding of [retired miners'] health benefits that engulfed the coal industry in the late 1980s." *A.T. Massey Coal Co., Inc. v. Massanari*, 305 F.3d 226, 228 (4th Cir. 2002). The Act merged certain UMWA health benefit plans (or trusts) into a Combined Fund designed to provide health benefits to retirees. 26 U.S.C. § 9702(a). The Combined Fund is financed by annual premiums assessed against current or former "signatory operators," that is, operators who signed an NBCWA requiring contributions to the earlier health benefit plans. *A.T. Massey*, 305 F.3d

at 231; 26 U.S.C. §§ 9701(b)(1), (b)(3) & (c)(1). The Act also makes certain "related person[s] to a signatory operator" liable for a signatory operator's premiums. 26 U.S.C. § 9704(a). A "related person" includes a corporate member of the "controlled group of corporations" that includes the signatory operator. *Id.* § 9701(c)(2). In turn, a "controlled group of corporations" includes a "parent-subsidiary controlled group," 26 U.S.C. § 1563(a)(1), making members of the parent-subsidiary group "related persons" who may be liable under the Coal Act.

The district court imported the Coal Act's scheme for assessing liability for health care benefits into the pension context. Thus, the court determined that Erwin Supply, Clinchfield, and Pittston's corporate relationship (as members of the Pittston parent-subsidiary controlled group) was sufficient to impute signatory status to Erwin Supply on the 1950 NBCWA, which was in fact signed by Clinchfield. Based on this imputed signatory status for Erwin Supply, the court held that Yates performed classified work (work in or about the mines) under the 1950 NBCWA, making him eligible for pension credit for his Erwin Supply employment between September 9, 1957, and March 31, 1968. The district court erred. The Coal Act has nothing to do with pension benefits for miners. Rather, as Congress said, the Coal Act was passed (a) "to remedy problems with the provision and funding of health care benefits with respect to the beneficiaries of multiemployer benefit plans that provide health care benefits to retirees in the coal industry," and (b) "to provide for the continuation of a privately financed self-sufficient program for the delivery of health care benefits to the beneficiaries of such plans." Coal Industry Retiree Health Benefit Act of 1992, Pub. L. No. 102-486, 106 Stat. 2776, 3037. The Coal Act's imputed liability provisions thus relate to the funding of health care benefits. The 1974 Pension Plan remains "a creature solely of contract." Appellant's Br. at 26.

Yates argues that, the Coal Act aside, the decision in *Mullins v. Mullins*, 537 F. Supp. 840, 844 (W.D. Va. 1982), *aff'd* 701 F.2d 166 (4th Cir. 1983), entitles him to receive the additional pension credit. This is so, Yates contends, because the inquiry in *Mullins*, a case dealing with pension eligibility under the 1950 NBCWA, focuses only on whether the retiree performed classified work. This argument is without merit. While the dispute in *Mullins* did center on what

counts as classified work, that opinion does not dispense with the 1974 Plan's condition that a retiree receives pension credit only for service with a signatory to an NBCWA or some other relevant wage agreement. The employer in *Mullins* was Clinchfield, specifically recognized in that opinion as "a signatory party to all Coal Wage Agreements with the United Mine Workers from 1950 through 1968." 537 F. Supp. at 843. Nothing in *Mullins* affects the dispositive fact in this case: Erwin Supply was not a signatory to the 1950 NBCWA or any other wage agreement that would entitle Yates to receive pension credit for his work from September 9, 1957, to March 31, 1968. In short, Yates was not contractually entitled to the additional credit.

For the foregoing reasons, we conclude that the Trustees of the 1974 Plan did not abuse their discretion in awarding Yates only 32.75 years of signatory service credit. We therefore reverse the district court's grant of partial summary judgment to Yates and remand for summary judgment to be entered in favor of the UMWA 1974 Pension Plan.

*REVERSED AND REMANDED*